## DAVIS v. FARMERS MUTUAL FIRE INSURANCE CO.

(Filed December 15, 1903).

INSURANCE—*Fire Insurance—Policy—Transfer—Estoppel.*

> A transfer of a policy by the president of an insurance company
> is binding, though the transfer was not made according to the
> blank form printed on the back of the policy.

ACTION by J. D. Davis and others against the Farmers
Mutual Fire Insurance Company, heard by *Judge W. H.
Neal* and a jury, at June Term, 1903, of the Superior Court
of WILKES County. From a judgment for the plaintiffs the
defendant appealed.

*Glenn, Manly & Hendren,* for the plaintiffs.
*W. H. Barber,* for the defendant.

CLARK, C. J. J. D. Davis, the *feme* plaintiff, and one
W. C. Meadows were equal owners of a mill and insured the
same in the defendant company, the policy being issued in
their joint names. Afterwards W. C. Meadows sold his
interest in the mill to J. D. Davis and she sent the policy
by her husband to C. N. Hunt, the president of the company,
to have it properly transferred to her. Said Hunt took the
policy, said he could change it right there, erased the words
"W. C. Meadows and" from the statement in the face of the
policy that it was payable to "W. C. Meadows and J. C.
Davis," and wrote at that place "erased by C. N. Hunt,
President," and handed the policy back.

There was a blank form printed on the back of the policy to
be filled out and signed in case of transfer by the transferrer,
and a blank under it for assent of the company to such trans-
fer, to be signed by its president. The president, instead
of filling out those blanks, requiring Meadows to sign the

transfer and then signing the assent himself, took the short-hand method above stated, and the company, now that the property has been burned, gravely contends that it is released from liability by the conduct of its own president. Though Meadows did not sign the transfer, it is not denied that at that time the plaintiff had purchased his interest in the property. The plaintiff having sent the president of the company the policy for a proper transfer, had a right to rely upon his having made the change in the proper method. She did not have to look to the scope of his powers, as in the case of a local agent, for he was the president—the general representative of the company. Thereafter the company ratified the assignment by making an assessment on the plaintiff as sole owner of the policy, which assessment she paid.

Even if the printed blank on the back of the policy were a stipulation that transfers could only be made in that mode, "the authorities are numerous that a general agent can waive any stipulation in the policy, notwithstanding a clause in the policy forbidding it, for he can waive that clause as well as any other. A party cannot bind himself not to agree to modifications in a contract, and a corporation acts through its agents in the scope of their agency, and the agency here was a general agency." See the full discussion as to the powers of a general agent, 1 May on Insurance, sec. 151, and other authorities cited in Gwaltney's case, 132 N. C., at p. 920, to sustain the proposition above quoted. Certainly the president of the company did not release the company by his action in this case. It in nowise affects the case that Hunt was the agent who issued the policy as well as president, and that this is a mutual insurance company.

No error.